**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. |
| | : | 3:13-CR-214(VLB) |
| v. | : | |
| | : | |
| EDWARD MEMOLI | : | |
| | : | October 16, 2014 |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART**
**DEFENDANT EDWARD MEMOLI'S MOTIONS IN LIMINE**
**[Dkts. 59, 60, 61, 65, 66, 67, 68, 69 ,70, 71, 74, 75]**

Before this Court are seven evidentiary motions filed by the Defendant Edward Memoli ("Defendant").  For the reasons and subject to the limitations stated below, Defendant's Motion in Limine to Preclude the Government from Eliciting Testimony Regarding Purported Uncharged Misconduct [Dkts. 60, 65] is GRANTED in part and DENIED in part, and Defendant's Motion in Limine to Preclude the Government from Eliciting Certain Testimony from Lisa Bernini [Dkts. 59, 67, 74]; Motion in Limine to Preclude the Government from Introducing Evidence Regarding the Conspiracy Subsequent to January 26, 2011 [Dkts. 71, 75]; Motion in Limine to Preclude the Government from Introducing Recorded Conversations of Victim 1 with Richard Uva and Joseph Casolo [Dkts. 61, 68]; Motion in Limine to Preclude the Government from Introducing Statement by the Defendant [Dkt. 66]; Motion in Limine to Preclude the Government from Introducing Testimony Regarding the Defendant's Federal Income Taxes [Dkt. 69]; and Motion in Limine to Preclude the Government from Introducing Testimony Regarding Victim's State of Mind [Dkt. 70] are DENIED.

I.      **Background**

By an indictment filed November 21, 2013 ("Indictment"), Defendant is charged with conspiring to obstruct interstate commerce by extortion, and aiding and abetting such acts, in violation of 18 U.S.C. § 1951(a) and 2. [Dkt. 26]. The Indictment alleges that Defendant conspired with a man named Joseph Casolo ("Casolo") to impersonate individuals associated with Italian organized crime in order to extort money from a small business owner ("Victim 1") who regularly engaged in interstate commerce and who used a business checking account in Connecticut [Dkt. 26 at ¶¶ 2, 4]. The Indictment alleges that Defendant and Casolo threatened Victim 1 during telephone calls and other communications, telling him that he and his family members would be physically harmed if Victim 1 did not make extortion payments to Casolo. [*Id.* at ¶ 4]. The Indictment further alleges that as a result of Defendant's and Casolo's threats of violence and force, Victim 1 made payments of more than $100,000 to Casolo, a portion of which Casolo then transmitted via wire transfer to compensate Defendant for his assistance in the extortion scheme. [*Id.* at ¶¶ 5-6].

The Government's pretrial filings indicate that, among other evidence, they plan to call Casolo's girlfriend, Lisa Bernini ("Bernini") as an unindicted co-conspirator witness, and also plan to present statements by the Defendant which may be used to impeach Defendant's testimony or counter Defendant's theory of the case.

II.     **Motion in Limine to Preclude the Government from Eliciting Testimony Regarding Purported Uncharged Misconduct**

Defendant seeks to preclude the Government from introducing (a) testimony from an individual named Anthony Desabella ("Desabella") regarding threats that Defendant and Casolo allegedly made towards Desabella; and (b) an audio recording of a conversation between Desabella and a reputed organized crime figure named Richard Uva ("Uva") on November 22, 2010 in which Desabella discusses those threats.  [Dkts. 60, 65].[1]  Defendant contends that he has not been charged with any crime relating to the alleged actions against Desabella, and that therefore both items of evidence are inadmissible against him as hearsay not subject to any exception under Federal Rule of Evidence 404(b)(2).  [*Id.*].

(a) Testimony of Desabella Regarding Defendant's Extortionate Threats

The Government argues that Desabella's testimony regarding Defendant's and Casolo's threats to him is admissible because it will establish Defendant's and Casolo's *modus operandi* in carrying out their extortionate scheme against both Desabella and Victim 1, and is therefore permissible "other act" evidence under Federal Rule of Evidence 404(b)(2).  [Dkt. 77 at 12-13].  Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed.R.Evid. 404(b)(1).  However, the court may admit such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

---

[1] Defendant also opposes the introduction of testimony from an individual named Alberino Carrara ("Carrara") regarding threats Defendant allegedly made towards Carrara.  [Dkt. 65 at 1, 4].  In its Opposition, the Government notes that in light of Desabella's anticipated testimony, it does not intend to call Carrara in its case-in-chief.  [Dkt. 77 at 7 n. 3].  Accordingly, the Court does not rule on the admissibility of Carrara's testimony here.

3

accident." Fed.R.Evid. 404(b)(2).  Courts in the Second Circuit follow "the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402."  *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (citation omitted).  When reviewing a court's decision to admit evidence under Rule 404(b), the Second Circuit will consider "whether: (1) the prior crimes evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction." *Curley*, 639 F.3d at 57 (quotation omitted).

Defendant argues that Desabella's testimony regarding Defendant's alleged threats is not relevant to show proof of intent or absence of mistake and therefore is not admissible as "other acts" evidence.  [Dkt. 65 at 4].  In support of this argument, Defendant attempts to highlight dissimilarities between the facts underlying Defendant's indictment and the allegations that will be made by Desabella at trial, pointing out that Desabella never made a payment to Defendant and that Defendant's alleged threats against Desabella only lasted a few weeks.  [*Id.*]. Defendant contends that in view of these factual dissimilarities, the evidence's limited probative value is substantially outweighed by unfair prejudice.  [*Id.* at 5]. The Court does not agree.  Neither Defendant's success in extracting money from Desabella, nor the length of time during which Defendant targeted Desabella, hampers the testimony's tendency to suggest that Defendant and Casolo conspired to extort money by threatening Desabella in the same manner and based on the

4

same circumstances that form the basis of Victim 1's alleged extortion, and that Defendant employed the same *modus operandi* to target Desabella as Defendant is accused of using to target Victim 1.  Therefore, the Court finds that Desabella's testimony is properly offered for the purpose of showing Defendant's intent and absence of mistake in unlawfully extracting money from Victim 1.  *See* Fed.R.Evid. 404(b)(2).  The Court also finds that this evidence is substantially relevant to the question of whether Defendant knowingly threatened Victim 1, and that the probative nature of this testimony outweighs its potential prejudice under Rule 403.[2] Accordingly, Defendant's Motion in Limine to exclude Desabella's testimony is DENIED.

(b) Recording of Desabella's conversation with Uva

The Government contends that the audio recording of Desabella's November 22, 2010 conversation with Uva is admissible as a verbal act.  "A 'verbal act' is a statement which, irrespective of its truth or falsity, has legal significance, or which, irrespective of its truth or falsity, explains the legal significance of an otherwise ambiguous act."  *United States v. Cicale*, 691 F.2d 95, 108 (2d Cir. 1982).  Within this framework, statements offered "as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay."  *United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999).  However, although here Defendant's threats towards Desabella constitute nonhearsay verbal acts under Rule 801, Desabella's out-of-court statements relaying those threats to

---

[2] The Government also argues that Desabella's testimony is admissible because it is inextricably intertwined with the evidence regarding the charged offense.  [Dkt. 77 at 9-12].  Because the Court dismisses Defendant's Motion in Limine to preclude Desabella's testimony under Rule 404(b), it does not reach the Government's other argument.

Uva must also conform to the Rules of Evidence in order for the recorded conversation to be admissible.  *See* F.R.Evid. 805.[3]

Desabella's out-of-court statements are not admissible as verbal acts because Desabella is not threatening Uva by repeating Defendant's threat.  To the contrary, Desabella's words to Uva appear to be out-of-court assertive statements within the definition of Rule 801 and therefore must conform to an exception to the ban against hearsay under Rule 803 in order to be admissible.  The only such exception the Government suggests is the exception for evidence tending to show state of mind under Rule 803(3).  Federal Rule of Evidence Rule 803(3) provides a hearsay exception for "[a] statement of the declarant's then-existing state of mind . . . or emotional, sensory, or physical condition."  *United States v. Coplan*, 703 F.3d 46, 85 (2d Cir. 2012) *cert. denied*, 134 S. Ct. 71 (2013).  However, Defendant argues that Desabella's state of mind is irrelevant, as it does not go to a fact of consequence in determining the action against Defendant, and in any case is available through Desabella's testimony.  [Dkt. 65 at 6].  Furthermore, Defendant contends that the recording is rife with the potential for unfair prejudice, as it pertains in part to serious threats from another unrelated party named "Ed."  [*Id.*].

The Court agrees that Desabella's state of mind is not relevant to the question of Victim 1's state of mind, and therefore is not relevant to prove the elements of the

---

[3] The Court cites to a Second Circuit case, *United States v. Stratton*, 779 F.2d 820 (2d Cir. 1985) for the proposition that threats repeated by an out-of-court declarant to a third party are admissible as verbal acts.  [Dkt. 77 at 34].  However, this case is inapposite.  The declarant, Farber, and the initial speaker of the threats, Stratton, were co-defendants and therefore Stratton's report of the threats to Farber was admissible as a co-conspirator statement under Rule 801(d)(2)(E), and Farber's out-of-court repetition of his co-conspirator's threats to a third party were admissible as statements against interest under Rule 804(b)(3).  *See Stratton*, 779 F.2d at 830-31.  Here, neither Rule applies.

offenses with which Defendant is charged.[4]  Furthermore, as Defendant points out,
evidence of Desabella's state of mind will be available through Desabella's
testimony in court.  Accordingly, Defendant's Motion in Limine as it relates to the
exclusion of the November 22, 2010 recorded conversation between Desabella and
Uva is GRANTED.

III.    **Motion in Limine to Preclude the Government from Introducing Evidence
        Regarding the Conspiracy Subsequent to January 26, 2011**

        Defendant seeks to preclude the introduction of evidence regarding Casolo's
extortionate activity against Victim 1—which Casolo carried out with Bernini—
subsequent to January 26, 2011.  [Dkts. 71, 75; *incorporating by reference* Dkt. 67 at
4-5].  Defendant contends that on January 26, 2011, Defendant received his last
payment from Casolo, and that the Court should find that Defendant withdrew from
the conspiracy after that date and is therefore not responsible for any of Casolo's
and Bernini's subsequent extortionate activity.  [Dkt. 75 at 1-2].  The Government
contends that Defendant has not carried his burden of showing that he affirmatively
withdrew from the conspiracy after January 2011.  [Dkt. 70 at 13].  Furthermore, the
Government argues that Defendant made statements to Victim 1 during a recorded
conversation on September 2, 2011 that demonstrate Defendant was still furthering
the aims of the conspiracy as late as September 2011.  [Dkt. 70 at 16].

        Withdrawal from a conspiracy is an affirmative defense for which the
defendant bears the burden of proof—therefore, once the government has shown
that a conspiracy existed and that a given defendant was a member of it, his

---

[4] However, the Court notes that the recording may become relevant and admissible
as a prior consistent statement under Federal Rule of Evidence 801(d)(1)(B),
provided that it is only offered for the purposes permitted by that Rule and does not
constitute improper bolstering.

membership is presumed to continue until the last overt act by any of his co-conspirators, unless the defendant proves that the conspiracy was terminated or that he took affirmative steps to withdraw from it.  *United States v. Flaharty*, 295 F.3d 182, 192 (2d Cir. 2002).  It is not enough to simply stop taking acts in furtherance of the conspiracy: to demonstrate withdrawal, the defendant "must also show that he performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators."  *United States v. Eppolito,* 543 F.3d 25, 49 (2d Cir. 2008) (quoting *United States v. Borelli,* 336 F.2d 376, 388 (2d Cir. 1964)). Affirmative evidence of a defendant's withdrawal is required to ensure that the defendant genuinely removed himself from the conspiracy "and is not simply attempting an after-the-fact escape from liability."  *Flaharty*, 295 F.3d at 192. Therefore, "passive nonparticipation in the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy[;] [t]o avert a continuing criminality there must be affirmative action to disavow or defeat the purpose of the conspiracy." *Smith v. United States*, 133 S. Ct. 714, 720 (2013).

The Court finds that Defendant has not asserted an "affirmative action to disavow or defeat the purpose of the conspiracy."  *Id.*  In his Motion, Defendant conclusorily states that at some unspecified point in time, Defendant "informed Casolo he did not wish to be involved any longer."  [Dkt. 67 at 4].  Without more, this is insufficient to establish an affirmative withdrawal.  Defendant's contention that his withdrawal occurred when, according to Bernini, Casolo stopped using Defendant because Casolo "did not want to pay him," is also deficient as it

suggests no affirmative intent, let alone action, on Defendant's part to withdraw from Casolo's extortionate scheme.  [Dkt. 67 at 4].

Furthermore, the Court agrees that Defendant's September 2, 2011 phone call to Victim 1 could be construed to constitute an act in *furtherance* of the conspiracy. Contrary to Defendant's contention that his repeated instructions to Victim 1 during the call not to pay any more money were "helpful," the transcript of the call suggests that Defendant's motivation for advising Victim 1 was to conceal the conspiracy.  Defendant does not tell Victim 1 that he does not have to pay because Defendant is not in fact a violent Mafia-connected enforcer and Victim 1's family is not actually in danger of organized crime violence.  Instead, Defendant continues to perpetuate the lies he has told Victim 1, and by perpetuating those lies, continues to use a relationship of intimidation and fear to compel Victim 1's silence.  In this context, the fact that Defendant does not actually extort any money from Victim 1 on September 2—or any date thereafter—is immaterial to the fact that Defendant's actions towards Victim 1 on that date could properly be deemed acts in furtherance of the conspiracy at issue in this case.  Accordingly, Defendant's Motion in Limine to exclude evidence of the conspiracy after January 26, 2011 is DENIED.

IV.   **Motion in Limine to Preclude the Government from Eliciting Certain Testimony from Lisa Bernini**

Defendant also seeks to preclude testimony from Bernini regarding conversations she claims she overheard between Casolo and Defendant during the

fall of 2010, in which Casolo instructed Defendant on what to say to Victim 1 to extort money from him.  [Dkts. 59, 67, 74].[5]

Defendant argues that Bernini's proffered testimony regarding the overheard phone conversations, which occurred sometime in the fall of 2010, does not meet the standard for opposing party statements under Federal Rule of Evidence 801(d)(2)(E) because at the time those conversations occurred, Defendant was not yet part of a conspiracy with Casolo.  [*Id.*].  The Government maintains that by the close of its case, it will be able to establish that Casolo's statements are indeed admissible as co-conspirator statements under the Rule.  [Dkt. 77 at 22-23].

Rule 801(d)(2)(E) provides that a statement is not hearsay if it is made by criminal co-conspirators "during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E).  In order to admit a statement under this Rule, the court must find "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy."  *United States v. Tracy,* 12 F.3d 1186, 1196 (2d Cir.1993) (citing *Bourjaily v. United States,* 483 U.S. 171, 175 (1987)).  As the Government notes, the

---

[5] Defendant also opposes the introduction of testimony by Bernini to offer out-of-court statements by Casolo that do not directly involve the Defendant, including statements Casolo allegedly made directing Bernini to drive him to stores to wire money to Defendant, and statements Casolo allegedly made directing Bernini to extort money from Victim 1 on September 6, 2011.  [Dkt. 74 at 2].  In its Opposition, the Government does not respond directly to Defendant's Motion to preclude these statements, noting instead that Bernini will testify that she accompanied Casolo to transfer money to Defendant, that she would take the money Victim 1 dropped off at her home and place it in Casolo's dresser, and that Bernini benefitted from Victim 1's payments to Casolo.  [Dkt. 77 at 28 n. 12].  The Court infers from the Government's characterization of Bernini's testimony that the Government does not intend to offer this evidence through Casolo's out-of-court statements, and therefore the Court does not rule on their admissibility here.

courts in this Circuit follow the approach laid out in *United States v. Geaney,* 417 F.2d 1116 (2d Cir.1969) and its progeny.  Under *Geaney*, co-conspirator statements are conditionally admitted and then the Court "must determine, when all the evidence is in, whether in [its] view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence."  *Id.* at 1120.

Here, the Government has articulated sufficient evidence to suggest that it will be able to prove the prerequisites for co-conspirator statement admissibility at trial.  [Dkt. 77 at 23-31].  The Government intends to show that a conspiracy existed between Casolo and Defendant to extort money from Victim 1 through the testimony of Victim 1 about Defendant's and Casolo's threats; cell phone records demonstrating Casolo and Defendant's regular communication with each other and with Victim 1; Defendant's statements to the FBI in which he admits to repeatedly threatening Victim 1 to extort money at Casolo's urging; and wire transfer records showing Casolo's payments to Defendant, among other evidence.  [*Id.* at 24-27]. The Government further contends that Bernini's testimony will be able to establish that the statements made by Casolo in his phone calls with Defendant in the fall of 2010 were made in furtherance of this conspiracy.  [*Id.* at 27-29].  Furthermore, the Government states that evidence in the form of phone and wire transfer records will demonstrate that Casolo's statements to Defendant, as overheard by Bernini, were made during the course of the conspiracy.  [*Id.* at 29-31].

Defendant argues that the Government does not have sufficient evidence that there was *already* a conspiracy between Casolo and Defendant at the time of the calls Bernini overheard in the fall of 2010, because there is no evidence prior to the

telephone calls of Defendant's involvement in Casolo's scheme.  [Dkt. 74 at 3].
However, this absence of prior evidence is not necessarily fatal if the Government
can establish that these phone calls precipitated the creation of the conspiracy.
Every conspiracy must begin somewhere, and co-conspirator statements made in
furtherance of a conspiracy's creation are undoubtedly contemplated within the
scope of Rule 801(d)(2)(E).  However, if the Government is unable to establish this
or any of the other prerequisites at trial, the Court will instruct the jury to disregard
the Bernini's testimony of Casolo's statements.  *See Geaney*, 417 F.2d at 1120.

        Defendant also argues that it would be mere conjecture on Bernini's part to
testify about the content of Defendant's response to Casolo's statements, and that
therefore Bernini cannot properly testify to whether Defendant was conspiring with
Casolo during the fall 2010 telephone calls.  [Dkt. 74 at 3].  However, the Court finds
that it is possible for the jury to infer that Casolo's statements were made in
furtherance of the conspiracy without being privy to Defendant's side of the
conversation if Bernini's testimony describes statements by Casolo that would
"prompt the listener . . . to respond in a way that promotes or facilitates the carrying
out of a criminal activity."  *United States v. Desena,* 260 F.3d 150, 158 (2d Cir. 2001)
(quoting *United States v. Maldonado–Rivera,* 922 F.2d 934, 958 (2d Cir. 1990).  Co-
conspirator statements are also admissible under Rule 801(d)(2)(E) "if they seek to
induce a co-conspirator's assistance . . . or inform each other as to the progress or
status of the conspiracy."  *Desena,* 260 F.3d at 158 (internal quotation marks
omitted).  The Government contends that Bernini will testify to hearing these types
of statements.  Specifically, the Government states that Bernini overheard Casolo
direct Defendant to assume the identity of "Lorenzo"; to suggest that "Lorenzo"

was associated with organized crime in order to "put a scare" into Victim 1 and compel him to pay money; and to call Victim 1 right away because "we need to get this done." [Dkt. 77 at 28]. However, the Defendant is correct that Bernini cannot properly testify to her impression of Defendant's responses to these statements. Accordingly, the Court DENIES Defendant's Motion in Limine to preclude Bernini's testimony, but limits Bernini's testimony about the fall 2010 phone calls to Casolo's overheard statements on those calls, and prohibits the Government from offering Bernini's testimony for the purpose of testifying about Defendant's statements in response. Furthermore, this order is without prejudice to a motion by Defendant for a curative instruction or other appropriate order(s) after the close of the Government's case.

**V.    Motion in Limine to Preclude the Government from Introducing Recorded Conversations of Victim 1 with Richard Uva and Joseph Casolo**

Defendant also seeks to preclude the Government from introducing (a) a recorded conversation on December 10, 2010 between Victim 1 and Uva in which Victim 1 describes the threats being made against Victim's 1 family, and (b) several recorded conversations between Victim 1 and Casolo between July and September 2011, in which Casolo continues his extortionate scheme against Victim 1. [Dkts. 61, 68]. Defendant argues that all of these recordings are inadmissible hearsay under Rule 802 and do not fall within any of the exceptions of Rule 803. [*Id.*].

(a) Recorded conversation between Victim 1 and Uva on December 10, 2010

The Government contends that Victim 1's recounting of Defendant's threats to Uva is admissible under the Rule 803(3) hearsay exception because the recording reflects Victim 1's emotional condition in response to Defendant's threats. [Dkt. 77

13

at 32].[6]   As discussed in Part II, *supra*, Rule 803(3) allows statements, otherwise excluded as hearsay, to be introduced to show the declarant's then-existing state of mind.

Defendant argues that there is no reference to Defendant in the recording, and that Victim 1's state of mind with regards to threats not made by Defendant are not admissible against him, thus making the recording irrelevant.  [Dkt. 68 at 2].  It is true that there is no explicit mention of the name "Lorenzo," Defendant's assumed identity during the course of his alleged extortionate scheme, in the recording.  [Dkt. 68 at Ex. A].  Instead, Victim 1 tells Uva that "Joe" has called Victim 1 to tell Victim 1 that "they" are threatening Victim 1's family.  [*Id.* at Ex. A at 2].  Victim 1 tells Uva that "the guy said he wants . . . 2500 today" and that Joe was told that Victim 1 "better watch out.  Or his daughter's gonna have a miscarriage."  [*Id.*].  However, the Government argues that it will tie Victim 1's state of mind in this recording to testimony by Victim 1 that Defendant had previously threatened Victim 1's pregnant daughter with physical harm, and that prior to this recording, Casolo had also informed Victim 1 that if he did not make an extortion payment of $2,500 on that date, Victim 1's pregnant daughter would suffer a miscarriage.  [Dkt. 77 at 33].  The Court finds that the jury could infer from the totality of this evidence that Victim 1's reaction to the threat he describes in the recording is the result of a fear of violence instilled in him by Defendant, making Victim 1's state of mind as to that threat relevant admissible evidence under Rule 803(3).  This evidence would also be admissible on rebuttal should Defendant testify or elicit testimony tending to show

---

[6] The Government also argues that the recording is admissible as a verbal act. [Dkt. 77 at 33-35].  However, Victim 1's out-of-court statements relaying Defendant's verbal acts are themselves hearsay and therefore inadmissible under the exclusion for "verbal acts" alone.  See discussion in Part II(b), *supra*.

that Victim 1 was mistaken as to Defendant's intent in seeking to induce Victim 1 to pay Casolo money.

Accordingly, Defendant's Motion in Limine to preclude the Government from introducing the December 10, 2010 recording of Victim 1's conversation with Uva is DENIED.

(b) Recorded conversations between Victim 1 and Casolo

The Government argues that Casolo's statements in the recordings of his calls with Victim 1 are co-conspirator statements under Rule 801(d)(2)(E). *See* Part IV, *supra*. In response, Defendant reiterates his argument that at the time of Casolo's recorded statements to Victim 1, which occurred between July and September 2011, Defendant was no longer part of the conspiracy that would form the basis of such an admissibility determination. [Dkt. 68 at 3]. However, as discussed in Part III, *supra*, Defendant has not offered the sort of affirmative act sufficient to suggest that he ever withdrew from the conspiracy, and Defendant's September 2, 2011 conversation with Victim 1 suggests that Defendant was in fact continuing to act in furtherance of the conspiracy until at least that day. Accordingly Defendant's Motion in Limine to preclude the government from introducing these recorded conversations is also DENIED.[7]

VI.   Motion in Limine to Preclude the Government from Introducing Statement by the Defendant

Defendant also seeks to preclude a statement made by Defendant to law enforcement agents on December 21, 2011 relating to Casolo's efforts to enlist the

---

[7] The Government also argues that the recordings are admissible as verbal acts or to show state of mind. [Dkt. 77 at 37-39]. Because the Court dismisses Defendant's Motion in Limine pursuant to Rule 801(d)(2)(E), it does not reach those arguments.

Defendant in extorting money from Victim 1.  [Dkt. 66].  During this interview, Defendant told agents that he initially rebuffed Casolo's attempts to become involved in the scheme, saying, "those days are behind me."  [*Id.* at 2].  Defendant does not appear to challenge the Government's assertion that this statement is admissible as a statement offered against an opposing party under Rule 801(d)(2)(A).  [Dkt. 77 at 49].  However, Defendant contends that the remark should be excluded from the evidence on the basis that it is of limited relevance under Federal Rule of Evidence 401 and unfairly prejudicial under Federal Rule of Evidence 403.  [Dkt. 66 at 2-3].

The Government opposes Defendant's motion on the grounds that the statement does not give rise to unfair prejudice.  [Dkt. 77 at 49-50].  For purposes of Rule 403, "[e]vidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."  *United States v. Quattrone,* 441 F.3d 153, 186 (2d Cir.2006) (quoting *United States v. Figueroa,* 618 F.2d 934, 943 (2d Cir.1980)).  As against a criminal defendant, unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief v. United States,* 519 U.S. 172, 180 (1997).

Defendant maintains that "those days are behind me" suggests that Defendant was engaged in criminal conduct in the past involving the type of extortionate conduct that is alleged in the present matter.  [Dkt. 66 at 2].  Defendant argues that in this context, the risk that evidence of prior criminal activity could lead a jury to infer criminal propensity overwhelms the evidence's relevance.  [*Id.*].

16

However, the Government maintains that it does not intend to offer Defendant's statement as evidence of Defendant's prior criminal history or character in conformity in violation of Rule 404(b)(1).  [Dkt. 77 at 50].  In view of the Government's representation, the Court is satisfied that the highly probative nature of Defendant's statement outweighs any potential risk of unfair prejudice. Defendant's statement is highly probative of Defendant's motive, as it refutes Defendant's anticipated position that he did not threaten Victim 1 or believe he was doing anything more than telling Victim 1 that if Victim 1 owed Casolo money, Victim 1 should pay.  [*Id.* at 6].  It also tends to show absence of mistake on the part of Defendant, and that Defendant's intent in getting involved in Casolo's scheme was to once again engage in extortionate activity.  Accordingly, Defendant's Motion in Limine to preclude Defendant's statement to law enforcement is DENIED.

VII.    Motion in Limine to Preclude the Government from Introducing Testimony Regarding the Defendant's Federal Income Taxes

Defendant also moves to preclude the Government from introducing evidence of Defendant's failure to file federal income taxes in 2010 and 2011 on the grounds that such evidence is not relevant under Federal Rule of Evidence 401 and does not trigger an exception under Federal Rule of Evidence 404(b)(2).  [Dkt. 69].  The Government maintains that Defendant's failure to file taxes, and his accompanying failure to declare the extortion payments he received from Casolo as income, is relevant admissible evidence that tends to show Defendant's motive, intent, and knowledge that those payments were derived from criminal activity and thus needed to be concealed.  [Dkt. 77 at 40-41].

As discussed in Part II, *supra*, Rule 404(b)(2) enables the Court to admit non-propensity evidence of crimes, wrongs and other acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed.R.Evid. 404(b)(2).  In support of admissibility under Rule 404(b)(2), the Government cites to instances in which courts have permitted the government to introduce tax returns as evidence of a defendant's knowledge that certain funds were derived from illegal sources.  *See, e.g.*, *United States v. Romero-Lopez*, 695 F.3d 17 (1st Cir. 2012); *United States v. Hogan*, 886 F.2d 1497 (7th Cir. 1989) [Dkt. 77 at 41-42].  The Court notes that the probative value of the tax returns in those cases was typically the *gap* between the defendant's filed tax return and the defendant's actual income, while Defendant in this case has failed to report *any* income during the years at issue.  However, Defendant does not refute Government's argument in any way, such as by asserting that Defendant had a legitimate reason not to file tax returns—for example, because he did not have any reportable income for those years—and the Court does not infer otherwise. Accordingly, the Court finds that evidence of Defendant's failure to file tax returns in 2010 and 2011 is admissible to show consciousness under 404(b)(2), and Defendant's Motion in Limine to preclude the Government from introducing that evidence is DENIED.

VIII.   **Motion in Limine to Preclude the Government from Introducing Testimony Regarding Victim 1's State of Mind**

Defendant moves to preclude the Government from introducing testimony by an individual named Alan Ericson ("Ericson") who was allegedly present with Victim 1 during one of Defendant's extortionate telephone calls, for the purpose of

demonstrating Victim 1's state of mind.  [Dkt. 70].  Defendant moves to exclude this evidence on the ground that the Government cannot establish that Defendant was the other party on the call, and that therefore the testimony is irrelevant under Rule 401 and more prejudicial than probative under Rule 403.  [*Id.* at 3].   In its opposition, the Government contends that Victim 1's testimony will establish that Ericson was present when Victim 1 received one of Defendant's telephonic threats.  [Dkt. 77 at 43-44].  The Government states that Ericson will then testify regarding his personal observations of Victim 1, as well as his recollection of certain statements that Victim 1 made during the telephone conversation while he was being threatened.  [*Id.* at 45].  The Government argues that these perceptions and recalled statements qualify for admission to demonstrate Victim 1's state of mind under Federal Rule of Evidence 803(3) and under the "excited utterance" exception under Rule 803(2).

As discussed in Part II, *supra*, under Rule 803(3) statements otherwise excluded as hearsay may be introduced to show a declarant's state of mind at the time the statements were made.  F.R.Evid. 803(3).  Ericson's testimony about Victim 1's demeanor and physical appearance are admissible under this exception.  Rule 803(2) also permits the admission of out-of-court statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  F.R.Evid. 803(2).  Ericson's testimony about Victim 1's statements in response to Defendant's threats would fit squarely within this Rule.  Therefore, on the condition that the Government is first able to show through Victim 1's testimony that Ericson was in fact present when Victim 1 received Defendant's call, the Court finds that Ericson's testimony is properly

admissible to show Victim 1's then-state-of-mind and to offer statements Victim 1 made in reaction to Defendant's alleged threats.

Defendant also argues that Ericson is an unreliable witness, and points out multiple discrepancies between Ericson's statements to government agents and other evidence in the record.  [Dkt. 70 at 2-3].  However, as the Government has pointed out, the reliability of a witness goes to the weight of evidence, not its admissibility, and the determination of Ericson's credibility is the proper realm of the jury, not the Court.

Accordingly, Defendant's Motion in Limine to preclude the Government from introducing Ericson's testimony is DENIED, subject to the condition that at trial the Government must establish that Defendant was the other party to the call witnessed by Ericson prior to introducing Ericson's testimony.

IX.    Conclusion

For the reasons and with the limitations described above, Defendant's Motion in Limine to Preclude the Government from Eliciting Testimony Regarding Uncharged Misconduct [Dkts. 60, 65] is GRANTED in part and DENIED in part, and Defendant's remaining Motions in Limine [Dkts. 59, 61, 66, 67, 68, 69 ,70, 71, 74, 75] are DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: October 16, 2014

20