## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION NO.** |
| | : | **3:13-CR-214(VLB)** |
| **v.** | : | |
| | : | |
| **EDWARD MEMOLI** | : | |
| | : | **April 2, 2015** |

### MEMORANDUM OF DECISION DENYING DEFENDANT EDWARD MEMOLI'S MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL [Dkts. 104, 106]

Before this Court are Defendant Edward Memoli's ("Defendant") Motion for Judgment of Acquittal pursuant to Fed. R. Cr. P. 29(c), and Defendant's Motion for New Trial pursuant to Fed. R. Cr. P. 33.  For the reasons follow, Defendant's Motions are DENIED.

I.    **Background**

By an indictment filed November 21, 2013 ("Indictment"), Defendant was charged with conspiring to obstruct interstate commerce by extortion, and aiding and abetting such acts, in violation of the Hobbs Act, 18 U.S.C. § 1951(a) and 2. [Dkt. 26].  The Indictment alleged that Defendant conspired with a man named Joseph Casolo ("Casolo") to impersonate an individual associated with Italian organized crime (known as "Lorenzo") in order to extort money from Edward Labella ("Labella"), the owner of a small heating–ventilation–air conditioning (HVAC) business who regularly engaged in interstate commerce and who used a business checking account in Connecticut.   [Dkt. 26 at ¶¶ 2, 4].   The Indictment alleged that Defendant and Casolo threatened Labella during telephone calls and

other communications, telling him that he and his family members would be physically harmed if Labella did not make extortion payments to Casolo. [*Id.* at ¶ 4]. The Indictment further alleged that as a result of Defendant's and Casolo's threats of violence and force, Labella made payments of more than $100,000 to Casolo, a portion of which Casolo then transmitted via wire transfer to compensate Defendant for his assistance in the extortion scheme. [*Id.* at ¶¶ 5–6].

Defendant proceeded to trial on October 17, 2014 and the jury was presented with evidence over the course of five days, which included the testimony of 11 witnesses, including the victim, Labella; Agent John Bokal ("Agent Bokal") of the Federal Bureau of Investigation, who interviewed Defendant as part of his investigation into the extortion scheme; Lisa Bernini ("Bernini"), Casolo's former long-term domestic partner; Anthony Desabella ("Desabella"), another individual who claimed he received similar threats from "Lorenzo"; and Alan Ericson ("Ericson"), Labella's account representative at an HVAC supply company. At the close of the Government's case, Defendant moved for a judgment of acquittal, which was denied by the Court. On October 30, 2014, the jury rendered its guilty verdict, convicting Defendant of Conspiracy to Obstruct, Delay or Affect Interstate Commerce by Extortion in violation of 18 U.S.C. § 1951(a), and of Aiding and Abetting the Obstruction of Interstate Commerce by Extortion in violation of §§ 1951(a) and 2. [Dkt. 97].

Defendant now moves for a judgment of acquittal under Fed. R. Cr. P. 29(c), claiming that the evidence presented by the government at trial was insufficient to sustain his conviction. [Dkt. 104]. Defendant has also moved for a new trial

pursuant to Fed. R. Cr. P. 33 on the same basis, as well as on the ground that the Court erred in admitting witness testimony that Defendant contends rendered Defendant's trial unfair.  [Dkt. 106].

II.    **Defendant's Motion for Judgment of Acquittal Pursuant to Rule 29**

   A.  **Legal Standard**

   Federal Rule of Criminal Procedure 29 provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal."  Fed. R. Crim. P. 29(c)(2).  "A Rule 29 motion should be granted only if the district court concludes there is 'no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'"  *U.S. v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) (citation omitted); *see U.S. v. Cossette*, 3:12CR232 JBA, 2013 WL 5274349 (D. Conn. Sept. 18, 2013) (same).  "A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial 'bears a heavy burden,'" *U.S. v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008), as he "must show that when viewing the evidence in its totality, in a light most favorable to the government, and drawing all inferences in favor of the prosecution, no rational trier of fact could have found him guilty."  *Irving*, 452 F.3d at 117.  Further, "it is well settled that Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury."  *U.S. v. Cote*, 544 F.3d 88, 99 (2d Cir. 2008) (internal quotation marks and citation omitted).  "The Court must give full play to the right of the jury to determine credibility."  *Id.*

**B.  Discussion**

Defendant first argues that the Government offered "substantially flawed" testimony in support of its claim that Defendant conspired with Casolo to extort money from Labella.  [Dkt. 105 at 2–6.]  Specifically, Defendant challenges the credibility of some of the Government's witnesses and the incomplete testimony of others, and contends that "the cumulative effect of this marginal, contradictory and compromised evidence falls short of what is legally necessary to convict." [*Id.* at 6.]

In support of his argument that Government witnesses Bernini's, Desabella's, and Labella's testimony was "deeply flawed," Defendant attempts to impeach each witness by drawing attention to their prior bad acts.  [*Id.* at  3–5]. Defendant also points to inconsistencies in Labella's testimony.  [*Id.* at 4–5]. Defendant's attempts to discredit these witnesses are unavailing on a motion for acquittal.  In this posture, "[t]he weight of the evidence is a matter for argument to the jury."  *United States v. Best*, 219 F.3d 192, 200 (2d Cir. 2000).  Furthermore, "where there are conflicts in the testimony, [the court] defer[s] to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence."  *Id.* (quoting *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998)) (internal quotation marks and citation omitted).

Defendant also argues that neither Bernini nor Agent Bokal testified that Defendant made threats to Labella, rendering the Government's proof on that element of its case insufficient to support a guilty verdict.  [Dkt. 105 at 3].  At trial,

the jury was instructed to determine whether the Government had proven beyond a reasonable doubt, *inter alia*, that Defendant used "the wrongful use or threat of force, violence or fear" to induce Labella to pay Casolo. *See* Court's Jury Charge at Part III, No. 41. However, Defendant's position that Bernini's and Agent Bokal's testimony failed to establish this element is unavailing in light of the fact that other witnesses, including Labella and Ericson, *did* testify to those threats. In order to prevail on a Rule 29 Motion, Defendant must establish that the *totality* of the evidence is insufficient to convict him—it is irrelevant that one piece of evidence, standing alone, would not have been enough. Defendant's attempt to argue that the telephone records introduced by the Government—showing a significant number of telephone calls between the Defendant and Casolo during the time Defendant was calling Labella—"do not establish a conspiracy" fails for the same reason. [Dkt. 105 at 3]. In considering a claim challenging the sufficiency of the evidence, pieces of evidence must be viewed "not in isolation but in conjunction." *United States v. Casamento*, 887 F.2d 1141, 1156 (2d Cir. 1989) (citing *United States v. Young*, 745 F.2d 733, 762 (2d Cir. 1984), cert. denied, 470 U.S. 1084 (1985)). "Viewing the evidence in conjunction is especially important in a conspiracy case . . . where so much of the evidence is not incriminating on its face and the jury, to infer the existence of a conspiracy, must piece together circumstantial evidence." *Id.*

In the present case, the Court concludes that the totality of the evidence was more than sufficient to permit a rational juror to infer that Casolo and Defendant conspired to extort money from Labella, and that Defendant employed

"the wrongful use or threat of force, violence or fear" in order to do so.  At trial, the jury was instructed that the Government was required to prove beyond a reasonable doubt, *inter alia*, that Casolo and Defendant had entered into an unlawful agreement to commit extortion, and that Defendant had knowingly and willfully became a member of this conspiracy.  *See* Court's Jury Charge at Part III, No. 36.  To establish this element, the Government introduced several pieces of evidence, including Defendant's admissions to Agent Bokal during their first interview in December 2011 that Defendant had entered into an agreement with Casolo to exact money from Labella, and that he had received payment from Casolo in exchange for his participation in the scheme; testimony by Bernini regarding Casolo's instructions to Defendant about how to conduct his calls to Labella; wire transfer records demonstrating that Casolo wired money to the Defendant on the same days and shortly after Defendant made calls to Labella; and the aforementioned telephone records showing significant call activity between Casolo and Defendant during the time period in question.

As noted above, the Government also introduced sufficient evidence to permit a rational juror to conclude that Defendant employed "the wrongful use or threat of force, violence or fear" to induce Labella to pay Casolo.  During his first interview with Agent Bokal, Defendant admitted that the purpose of Defendant's phone calls to Labella was specifically *to scare him* in order to obtain his payments.  Moreover, as the Government points out, Labella himself testified at length that he received many threatening phone calls from Defendant in which he threatened Labella, his wife, his family members, and Labella's then-pregnant

daughter.  The impression and effect that these threats had on Labella was corroborated by Ericson's testimony and a recorded phone call on December 10, 2010 during which Labella described those threats.  There was also ample circumstantial evidence of Defendant's threats, including but not limited to Defendant's admitted use of thinly veiled insinuations such as "you don't want to meet me, and I don't want to meet you," and his ongoing use of the persona "Lorenzo" as a Mafia-connected enforcer working in concert with other members of organized crime.

Next, Defendant attempts to argue that the evidence against the Defendant with regards to his actions' impact on interstate commerce was legally deficient. [Dkt. 105 at 6–7].  At trial, the Government was required to prove beyond a reasonable doubt that, with regards to Count I, the conspiracy had a potential effect on interstate commerce, and with regards to Count II, that the conspiracy had an actual effect on interstate commerce.  *See* Court's Jury Charge at Part III, Nos. 37, 45.  Defendant claims that Labella's testimony regarding that impact was "completely lacking in detail" and claims that the Government failed to establish any adverse impact upon the Defendant's business.  [*Id.*]  The Court disagrees.

It is well established that under the Hobbs Act, the effect on interstate commerce can be *de minimis*, such that the jurisdictional element of that statute is satisfied if the extortion had the potential to prevent (for purposes of Count I) or in fact did prevent (for purposes of Count II) the use of extorted funds to purchase articles traveling through interstate commerce.  *See, e.g., United States v. Angelilli*, 660 F.2d 23, 35 (2d Cir. 1981) ("The jurisdictional requirement of the

7

Hobbs Act may be satisfied by a showing of a very slight effect on interstate commerce. Even a potential or subtle effect on commerce will suffice.") (internal citations omitted); *see also United States v. Jones*, 30 F.3d 276, 285 (2d Cir. 1994) (holding that Hobbs Act jurisdiction is established by illegal interference "in any manner whatever with interstate commerce, even when the effect of such interference or attempted interference is minimal"); *Jund v. Town of Hempstead*, 941 F.2d 1271, 1285 (2d Cir. 1991) (stating that "any interference with or effect upon interstate commerce, whether slight, subtle or even potential . . . is sufficient to uphold a prosecution under the Hobbs Act").  At trial, the jury was presented with multiple pieces of evidence in support of the position that the extortion scheme affected Labella's HVAC business, through which Labella routinely purchased equipment from out-of-state manufacturers.  This evidence included not only Labella's lengthy testimony about the delays, lay-offs and lost business opportunities that his business suffered as a result of the scheme, but also the corroborating testimony of Ericson, Labella's account representative at the Plimpton & Hills HVAC supply company, and the physical checks Defendant drew from his business account to pay Casolo.  This evidence was sufficient to permit the jury to find that Defendant's extortionate acts had the requisite effect on interstate commerce.

III.     **Defendant's Motion for a New Trial Pursuant to Rule 33**

         **A.  Legal Standard**

         Federal Rule of Criminal Procedure 33 provides that, upon a defendant's motion, a district court "may vacate any judgment and grant a new trial if the

interest of justice so requires."  Fed. R. Crim. P. 33(a).  "In exercising the discretion so conferred, the court is entitled to weigh the evidence and in so doing evaluate for itself the credibility of the witnesses."  *U.S. v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) (internal quotation marks and citation omitted); *U.S. v. Padilla*, 511 F. App'x 8, 10 (2d Cir. 2013) cert. denied, 133 S.Ct. 2815 (2013) (same).  However, only where exceptional circumstances exist may the trial judge "intrude upon the jury function of credibility assessment."  *Sanchez*, 969 F.2d at 1414; *U.S. v. Castelin*, 3:11–CR–183 JCH, 2013 WL 3540052 (D. Conn. July 10, 2013) (same).  "Even in cases involving a witness's perjured testimony, however, a new trial is warranted only if 'the jury probably would have acquitted in the absence of the false testimony.'"  *U.S. v. Truman*, 688 F.3d 129, 141 (2d Cir.2012) (quoting *Sanchez*, 969 F.2d at 1413–14).  "The test is whether it would be a manifest injustice to let the guilty verdict stand." *Sanchez*, 969 F.2d at 1414 (internal quotation marks and citation omitted).  In other words, for a court to grant a motion for a new trial after examination of the entire case, "[t]here must be a real concern that an innocent person may have been convicted." *Id.* (internal quotation marks and citation omitted).

### B.  Discussion

Defendant submitted his motion for a new trial based upon substantially the same grounds as his Rule 29 motion.  Defendant first reiterates his arguments, discussed *supra*, that the evidence offered by the Government was "substantially flawed" and that its witnesses had "massive credibility issues." [Dkt. 107 at 3–8].  Defendant also claims that the Court erred in introducing Agent

Bokal's testimony regarding a statement made by Defendant to Casolo when Casolo first asked him to join in the extortionate scheme.  [*Id.* at 8–9].

First, the defense does not present, and the Court cannot discern, any "exceptional circumstances" entitling it to "intrude upon the jury function of credibility assessment."  *Sanchez*, 969 F.2d at 1414.  To the extent that Bernini, Desabella, or Labella were biased, had a character for untruthfulness, or made inconsistent statements, those issues were explored on cross-examination and the jurors were entitled to discredit either the testimony presented or its impeachment according to their judgment.  Moreover, as discussed above, these witnesses' testimony was corroborated by physical evidence, recorded conversations, and the testimony of credible law enforcement officers.

Furthermore, to the extent that Defendant bases his Rule 33 Motion on the position that the Court erred in admitting Agent Bokal's testimony regarding Defendant's statement, Defendant's argument is also unavailing.  Before trial, Defendant sought to exclude this very statement, which was made by Defendant during his December 21, 2011 interview with Agent Bokal.  *See* [Dkt. 66].  During this interview, Defendant told Agent Bokal that he initially rebuffed Casolo's attempts to involve Defendant in the scheme, saying, "those days are behind me."  [*Id.* at 2].  In his Motion in Limine, Defendant argued that that remark should be excluded as unfairly prejudicial under Federal Rule of Evidence 403, because it impermissibly suggested that Defendant had engaged in extortionate conduct in the past.  [*Id.* at 2–3].  The Court denied Defendant's motion upon a finding that Defendant's statement was not being offered as evidence of Defendant's prior

criminal history, criminal propensity, or to show that he acted in conformity with that character, in contravention of Federal Rule of Evidence 404(b)(1).  [Dkt. 80 at 17].  Rather, the Court concluded that it was being offered to establish Defendant's motive, intent, knowledge and absence of mistake or accident, as permitted by Federal  Rule of Evidence 404(b)(2), in order to rebut the Defendant's contention that he did not threaten Labella and that he believed he was merely assisting Casolo in collecting a legitimate debt.  [*Id.*]  Indeed, Defendant's statement tended to demonstrate that Defendant fully appreciated the significance of what Casolo was asking him to do: engage in illegal extortionate activity.  In the face of Defendant's position at trial, the highly probative nature of Defendant's statement outweighed any risk of unfair prejudice.

Thus, the Court stands by its determination that Defendant's statement to Agent Bokal was properly admitted as "other acts" evidence under Rule 404(b)(2). If Defendant wishes to challenge the Court's ruling, he may do so on appeal. However, in light of the record before the Court, even if the Court's determination were found to be in error, this error does not warrant the granting of a new trial. Even where a court concludes that a piece of evidence should not have been presented to a jury, it should not grant a new trial unless the court finds "that the introduction of inadmissible evidence was a clear abuse of discretion and was so clearly prejudicial to the outcome of the trial that [the court is] convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Phillips v. Bowen*, 278 F.3d 103, 111 (2d Cir. 2002) (quoting *Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir. 1997) (internal quotation marks omitted).

The court should "measure prejudice by assessing error in light of the record as a whole." *Id.*

The Defendant does not contend, nor could he, that in the context of the voluminous record before the Court, the erroneous admission of the single statement "those days are behind me" could have derailed the jury and caused it to reach a "seriously erroneous result."  As detailed at length by the Government and the Court, there was more than sufficient other evidence presented to the jury to support its guilty verdict, such that any prejudice introduced by this statement was highly unlikely to have had a material effect on the weight of the evidence.  Furthermore, the Court gave a lengthy limiting instruction regarding evidence of "other acts" evidence.  Specifically, the Court instructed the jury that this evidence could only be considered for the limited purposes of, *inter alia*, deciding whether Defendant had the requisite state of mind to commit the crime charged in the indictment or committed the acts charged in the indictment by accident or mistake.  *See* Court's Jury Charge, Part II, No. 30.  The Court explicitly instructed the jury that they were not to "consider the evidence of the prior acts as a substitute for proof that Mr. Memoli committed the charged offense," nor were they permitted to "consider this evidence as proof that the defendant has a criminal personality or bad character."  *Id.*  Finally, Defendant does not contend that the statement itself was not voluntarily given to Agent Bokal, nor does the Court construe the statement was made involuntarily, taking into consideration the circumstances under which the statement was made.  It is clear from Agent Bokal's testimony that when Agent Bokal arrived at Defendant's home in

December 2011, Defendant invited him in and spoke with him willingly, and that Defendant understood that he was under no compulsion to continue to entertain Agent Bokal's questions once they had begun.  To the contrary, the evidence shows that Defendant willingly divulged information about his personal conduct in an effort to appear cooperative.

IV.   <u>Conclusion</u>

In sum, the Defendant has failed to demonstrate that, when viewing the evidence in its totality in a light most favorable to the Government, and drawing all inferences in favor of the Government, no rational trier of fact could have found him guilty of the charges alleged such that he is entitled to a judgment of acquittal pursuant to Rule 29.  Nor can the Court identify any reason to discard the jury's assessment of the facts and of the credibility of witnesses after a full presentation of the evidence at trial.  Exceptional circumstances do not exist such that the Court could "intrude upon the jury function of credibility assessment."  Nor is there "real concern that an innocent person may have been convicted" such that a new trial is warranted pursuant to Rule 33.

For the foregoing reasons, Defendant's Motion for Acquittal [Dkt. 104] and Motion for a New Trial [Dkt. 106] are DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  April 2, 2015

13